**Application of Dale R. FLOOK.**

**Patent Appeal No. 77–512.**

United States Court of Customs and Patent Appeals.

Aug. 4, 1977.

Frank J. Uxa, Thomas J. Clough, John B. Goodman, Harvey, Ill., attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Thomas E. Lynch, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from a decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the rejection of claims 1 through 10 of appellant's application for "Method for Updating Alarm Limits"[1] as nonstatutory subject matter under 35 U.S.C. § 101. We reverse.

1. Serial No. 194,032, filed October 29, 1971.

**22**

## The Invention

The invention relates to a process for controlling at least one parameter of a catalytic hydrocarbon conversion process. An alarm results when the actual value (PVL) of the parameter reaches an alarm value. The alarm value is not fixed but rather is periodically adjusted as a function of the history of the actual value of the parameter. This adjustment is accomplished by some type of computer in accordance with a mathematical control equation. In essence, the process involves an initial step which reads the parameters of the chemical process system, an intermediate step which uses an algorithm to calculate a desired new value for the alarm value, and a final step in which the actual alarm value is adjusted. Claim 1 is the only independent claim.

1. A method for updating the value of at least one alarm limit on at least one process variable involved in a process comprising the catalytic chemical conversion of hydrocarbons wherein said alarm limit has a current value of

$$Bo + K$$

wherein Bo is the current alarm base and K is a predetermined alarm offset which comprises:

(1) Determining the present value of said process variable, said present value being defined as PVL:

(2) determining a new alarm base $B_1$, using the following equation:

$$B_1 = Bo\ (1.0 - F) + PVL\ (F)$$

where F is a predetermined number greater than zero and less than 1.0;

(3) determining an updated alarm limit value which is defined as

$B_1 + K$; and, thereafter

(4) adjusting said alarm limit to said updated alarm limit value.

## The Rejection

The examiner stated that, while the claimed invention is clearly a method useful within the technological arts, the only part of this claimed invention which is not conventional is the particular algorithm used to adjust the alarm value. The examiner interpreted *In re Christensen*, 478 F.2d 1392, 178 USPQ 35 (Cust. & Pat.App.1973), as holding that such claims are not statutory subject matter under 35 U.S.C. §§ 100–101, notwithstanding the fact that they are within the technological arts.[2]

The board adopted the examiner's view of *Christensen* and the rejection based on that view. On rehearing, the board expressly rejected appellant's position regarding the holding in *Christensen*. Appellant's position is that express language in *Christensen* limited the holding in that case to claims in which the solution of the novel equation is the *last step* of a claimed process.[3] This condition is, of course, not present in appellant's claims. The board held that appellant's focus on the "last step" condition is misplaced because whether or not there happens to be a step after solution of the algorithm is a mere matter of form.

## OPINION

The issue in this case is whether a claim to a process which *uses* an algorithm to modify a conventional manufacturing system is statutory subject matter under

2. The examiner made a second argument which, to the extent that it is relevant to the § 101 rejection, appears to state that inventions which replace human judgment with mathematical formulas are nonstatutory. The board did not discuss this argument and neither the appellant nor the solicitor briefed it. We will, therefore, not consider it.

3. Both appellant and the PTO relied on the following passage in *Christensen* to support their contrary positions.

The issue before us in the instant case is also a narrow one, namely, is a method claim in which the point of novelty is a mathematical equation to be solved as the final step of the method, a statutory method? We follow the Supreme Court in concluding that the answer is in the negative. Given that the method of solving a mathematical equation may not be the subject of patent protection, it follows that the addition of the old and necessary antecedent steps of establishing values for the variables in the equation cannot convert the unpatentable method to patentable subject matter. [478 F.2d at 1394, 178 USPQ at 37–38.]

*Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273, 175 USPQ 673 (1972) and *Christensen*, supra. We hold that the invention here claimed is statutory subject matter.

*Christensen's* holding of nonstatutory subject matter is expressly limited to claims directed to determining data used in an algorithm and solving the algorithm, that is, to claims in which nothing is done after solution of the algorithm. *Christensen* recognized that the *absence* of a step other than those steps required for solution of the algorithm necessarily precludes the possibility that the claim involves statutory subject matter. The court, in *Christensen*, reasoned that *Benson* requires that a claim must include a recitation which materially limits the claim to a scope less than the mere act of solving an algorithm. The court determined that this requirement of a limitative recitation is not satisfied by the recitation of data-gathering steps but implied that it may be satisfied by the recitation of some sort of post-solution activity. Because the court found no post-solution activity recited in the claims of *Christensen*, the court did not need to reach the question of what sort of post-solution activity is required for statutory subject matter. Thus, *Christensen* does not render the claims before us unpatentable, because these claims include recitation of post-solution activity, a step in which the solution is applied to a control system.

We must then consider whether *Benson* itself excludes the present claims from patentability. *Benson's* proscription was limited by its words to claims which involve a "mathematical formula" and which "would wholly pre-empt the mathematical formula." 409 U.S. at 72, 93 S.Ct. at 257, 175 USPQ at 676. The present claims do not preempt the formula or algorithm contained therein, because solution of the algorithm, per se, would not infringe the

claims.[4] Thus, *Benson's* holding does not render the claims before us unpatentable. The decision of the board is *reversed.*

*REVERSED.*

---

4. See *In re Deutsch*, 553 F.2d 689, 193 USPQ 645 (Cust. & Pat.App.1977) and *In re Chatfield*, 545 F.2d 152, 191 USPQ 730 (Cust. & Pat.App. 1976), in which ·this court held there to be statutory subject matter in claims for the *use* of algorithms to control manufacturing facilities and computers, respectively.