In re Mehmet Turhan **TANER, Fulton Koehler, Nigel A. Anstey** and **Michael J. Castelberg.**

Appeal No. 81–598.

United States Court of Customs and Patent Appeals.

June 10, 1982.

Albert B. Kimball, Jr. and James B. Gambrell, Houston, Tex., for appellants.

Joseph F. Nakamura, Sol. and Jere W. Sears, Deputy Sol., Washington, D. C., for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

MARKEY, Chief Judge.

Taner et al. (Taner) appeal from a decision of the Patent and Trademark Office Board of Appeals (board) sustaining the rejection of Claims 1, 2, 4 through 15, 21, and 24 through 36 under 35 U.S.C. § 101 and the rejection of Claims 1, 2, 6, 7, 9, 21, 24, 25, 26, 28, 29, 31, and 36 under 35 U.S.C. § 103 in appellants' application Serial No. 548,572, filed February 10, 1975, entitled "Seismic Exploration with Simulated Plane Waves." We reverse.

*Background*

I. The Invention

Appellants' invention relates to a method of seismic exploration by which substantially plane or substantially cylindrical seismic energy waves are simulated from substantially spherical seismic waves.

In traditional methods of seismic exploration, seismic sources generate and transmit into the earth seismic energy waves. The waves are propagated through the earth in spherical or near-spherical wavefronts and are reflected by subsurface formations. The reflections return to the earth's surface and are detected by seismic receivers positioned over the area of exploration. The receivers convert the reflections into electrical signals which are then recorded on a record medium, e.g., magnetic tape or chart recorder. The recorded signals contain information on the geological substrata explored. For that information to be meaningful, it must, however, be corrected for various factors, such as spherical divergence of the waves as they are propagated through the substrata.

Appellants' claimed process simulates substantially plane or cylindrical seismic en-

ergy waves by summing the reflectional signals of the conventional spherical waves. The composite signal thus represents the response of subsurface formations to plane or cylindrical waves. Claims 1 and 24, the only independent claims, are illustrative:

1. A method of seismic exploration by simulating from substantially spherical seismic waves the reflection response of the earth to seismic energy having a substantially continuous wavefront over an extent of an area being explored having at least one dimension which is large relative to a seismic wavelength, comprising the steps of:

(a) imparting the spherical seismic energy waves into the earth from a seismic source at a source position;

(b) generating a plurality of reflection signals in response to the seismic energy waves at a set of receiver positions spaced in an array over an extent having at least one dimension which is large relative to a seismic wavelength; and

(c) summing the reflection signals to form for the source position a signal simulating the reflection response of the earth to seismic energy having a substantially continuous wavefront over at least one dimension which is large relative to a seismic energy wavelength.

24. A method of seismic exploration by simulating from substantially spherical seismic waves the reflection response of the earth to seismic energy having a substantially continuous wavefront over an extent of an area being explored having at least one dimension which is large relative to a seismic wavelength, comprising the steps of:

(a) imparting the spherical seismic energy waves into the earth from a set of seismic sources at source positions spaced in an array over an extent having at least one dimension which is large relative to a seismic wavelength;

(b) generating a reflection signal at a receiver position in response to each of the seismic energy waves; and

(c) summing the reflection signals to form for the receiver position a signal simulating the reflection response of the earth to seismic energy having a substantially continuous wavefront over at least one dimension which is large relative to a seismic energy wavelength.[1]

According to appellants' specification, the combining of signals to simulate plane or cylindrical wavefronts makes possible a reduction in data correction and thereby reduces the expenditures of time and money required for seismic exploration.

II. The Rejections

A. 35 U.S.C. § 101

In his final rejection, the examiner stated that because appellants' claims define a method of seismic data treatment which is not limited to any apparatus, the claims preempt all implementations of the claimed "mathematical and manipulative" operations upon seismic data, and, as such, fall outside the statutory categories of § 101.

In sustaining that rejection, the board undertook to apply the test established by this court in *In re Freeman*, 573 F.2d 1237, 197 U.S.P.Q. 464 (CCPA 1978), as modified by *In re Walter*, 618 F.2d 758, 205 U.S.P.Q. 397 (CCPA 1980). The board found that the claims directly recite a mathematical algorithm, i.e., summing, and that because "there is no close relationship between the algorithm ... and the other process steps except that the signals to be summed are generated by the precedent process steps," the claims preempt that algorithm. The board concluded therefore that the claims are nonstatutory. That the claims limit the algorithm to geophysical exploration and thus do not literally preempt the algorithm was not in the board's view sufficient to save the claims from characterization as nonstatutory. Citing *In re Christensen*, 478

---

1. If only one dimension is large relative to the seismic wavelength, the "substantially continuous wavefront" referred to in the claims is a cylindrical wavefront; if two dimensions are large, a plane wavefront is simulated.

F.2d 1392, 178 U.S.P.Q. 35 (CCPA 1973), which it viewed as directly on point, the board characterized appellants' claims as directed to the solution of a mathematical equation. In the board's view, the precedent steps merely served to supply the equation with required data and, as in *Christensen*, could not "convert the unpatentable method to patentable subject matter." 478 F.2d at 1394, 178 U.S.P.Q. at 37–38.

On reconsideration, the board reviewed its decision in light of *Diamond v. Diehr*, 450 U.S. 175, 101 S.Ct. 1048, 67 L.Ed.2d 155, 209 U.S.P.Q. 1 (1981), concluding that its original analysis conformed with *Diehr*. One board member dissented, viewing appellants' claims not "as an attempt to patent the concept of summing signals in general but rather to be drawn to a technique of forming a new type of seismic recording which simulates the response of subsurface formations to cylindrical or plane waves."

### B. 35 U.S.C. § 103

Three references were cited and relied upon by the examiner in making the § 103 rejection:

Smith, Jr. (Smith)   3,256,501   June 14, 1966
Laurent   3,775,737   Nov. 27, 1973
Miller, Dr. G. Kirby, "High Pressure Transducer," *Technical Report GTE Sylvania*, Jan. 10, 1973.

Smith discloses a linear sound source for creating explosive energy along a substantially continuous line to generate either cylindrical or conical seismic waves. Smith teaches that as the length of the source increases, the directivity of wave propagation normal to the line source is enhanced.

Both Miller and Laurent disclose continuous long line seismic cables having a plurality of hydrophones, i.e., seismic receivers, distributed therein at regular intervals. In the Laurent device, approximately 10–50 piezoelectric elements electrically connected in parallel are used as hydrophones.

The examiner rejected appellants' claims as obvious over Miller or Laurent in view of Smith. Treating Miller and Laurent, the examiner stated that "the 'summing' over a hypothetical series of receiver points is in-

herent in the line sources" of those references and "it is apparent that the continuous line receivers of Miller and Laurent sum ... the waves received ... to the extent claimed in simulating a cylindrical wavefront." The examiner relied on Smith for a teaching of the dimensions of a wave source relative to a seismic wavelength.

The board sustained the rejection, agreeing that "a line hydrophone as shown by Miller and Laurent will extend over a number of receiver positions and that the signals detected at various points along the line are inherently summed in the hydrophone."

### Issues

(1) Whether the method of seismic exploration recited in the claims constitutes statutory subject matter under 35 U.S.C. 101.

(2) Whether certain of appellants' claims were properly rejected under 35 U.S.C. § 103 as obvious from the prior act.

### OPINION

### I. 35 U.S.C. § 101

The Supreme Court has made clear that not every invention is embraced within the terms of § 101. Excluded therefrom are laws of nature, physical phenomena, and abstract ideas. *See Parker v. Flook*, 437 U.S. 584, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978); *Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1973). The Court in *Flook* reiterated, however, that although a law of nature cannot itself be patented, "a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm" 437 U.S. at 590, 98 S.Ct. at 2526, and that the claim must be considered as a whole when undergoing analysis under § 101. 437 U.S. at 594 n. 16, 98 S.Ct. at 2527 n. 16.

In *Diamond v. Diehr, supra,* a mathematical formula was used to control the in-mold time of a claimed molding process. The Court held that although the process for curing synthetic rubber included the use of a mathematical formula and a programmed digital computer, it nonetheless constituted

subject matter eligible for patenting under § 101. The Court construed the claims as calling for "nothing more than a process for molding rubber products and not as an attempt to patent a mathematical formula," noting that while an algorithm or mathematical formula, like a law of nature, cannot be the subject of a patent, Diehr sought neither to patent the formula in the abstract nor to preempt its use. 450 U.S. at 191, 101 S.Ct. at 1058.

Here, the board characterized the subject matter of appellants' claims as a whole as a "method for calculating (by signal summing) a simulated continuous wavefront reflection response from spherical seismic wave data." As such, the board viewed the claims as merely presenting and solving a mathematical algorithm. We disagree.

■ Appellants' claims are not in our view merely directed to the solution of a mathematical algorithm. Though the claims directly recite an algorithm, summing, we cannot agree that appellants seek to patent that algorithm in the abstract. Appellants' claims are drawn to a technique of seismic exploration which simulates the response of subsurface earth formations to cylindrical or plane waves. That that technique involves the summing of signals is not in our view fatal to its patentability. Appellants' claimed process involves the taking of substantially spherical seismic signals obtained in conventional seismic exploration and *converting* ("simulating from") those signals into another form, i.e., into a form representing the earth's response to cylindrical or plane waves. Thus the claims set forth a *process* and are statutory within § 101.

Though the board conceded that appellants' process includes conversion of seismic signals into a different form, it took the position that "there is nothing necessarily physical about 'signals' " and that "the end product of [appellants' invention] is a mathematical result in the form of a pure number." That characterization is contrary to the views expressed by this court in *In re Sherwood*, 613 F.2d 809, 204 U.S.P.Q. 537 (CCPA 1980), and *In re Johnson*, 589 F.2d

1070, 200 U.S.P.Q. 199 (CCPA 1978), where signals were viewed as physical and the processes were viewed as transforming them to a different state.

In *Sherwood*, amplitude-versus-time seismic traces were converted into amplitude-versus-depth seismic traces. *Johnson* involved a technique for removing unwanted noise from seismic traces to form noise-free seismic traces. In both cases, this court found that, though appellants' claims recited a mathematical algorithm for manipulating seismic data, the claims were, as a whole, drawn not to a method of solving that algorithm but to a process of converting one physical thing into another physical thing, and in *Sherwood* expressly recognized that "seismic traces are . . . physical apparitions." 613 F.2d at 819, 204 U.S.P.Q. at 546. That those "physical apparitions" may be expressed in mathematical terms is in our view irrelevant.

The board's reliance here on *In re Walter*, 618 F.2d 758, 20 U.S.P.Q. 397 (CCPA 1980) is misplaced. Though *Walter* involved processing of seismic data, the claims there were drawn to "an improved method of correlating" and to "an improved method of cross-correlating," i.e., not to "methods of or apparatus for seismic processing . . . [but rather] to improved mathematical methods of interpreting the results of seismic prospecting." 618 F.2d at 769, 205 U.S.P.Q. at 409.

The board relies too, on this court's decision in *In re Christensen*, supra. The claims there were drawn to a method of determining the porosity of subsurface formations and recited certain data collection steps, all of which were known in the prior art and a mathematical equation to be solved as the final step of the method. This court viewed the issue before it in *Christensen* as a "narrow one, namely, is a method claim in which the point of novelty is a mathematical equation to be solved as a final step of the method, a statutory method?". 478 F.2d at 1394, 178 U.S.P.Q. at 37. We concluded that *Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972), required that "the answer is in the negative" pointing to the Court's statement there:

It is conceded that one may not patent an idea. But in practical effect that would be the result if the formula for converting * * * [BCD numerals to pure binary numerals] were patented in this case. The mathematical formula involved here has no substantial practical application except in connection with a digital computer, which means that if the judgment below is affirmed, the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself.

It may be that the patent laws should be extended to cover these programs, a policy matter to which we are not competent to speak. [409 U.S. at 71, 93 S.Ct. at 257, 175 U.S.P.Q. at 676.]

478 F.2d at 1394, 178 U.S.P.Q. at 37.

Much has transpired in the development of the law in this area since our decision in *Christensen*. Most recently in *Diehr*, the Supreme Court made clear that *Benson* stands for no more than the long-established principle that laws of nature, natural phenomena, and abstract ideas are excluded from patent protection, 450 U.S. at 185, 101 S.Ct. at 1055, and that "a claim drawn to subject matter otherwise statutory does not become nonstatutory because it uses a mathematical formula, computer program, or digital computer." 450 U.S. at 187, 101 S.Ct. at 1056. The Court in *Diehr* rejected the "point of novelty" analysis saying "[t]he 'novelty' of any element or steps in a process ... is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter," 450 U.S. at 189, 101 S.Ct. at 1057, and went on to explain that "when a claim containing a mathematical formula implements or applies that formula in a structure or process, which, when considered as a whole, is performing a function which the patent laws were designed to protect (e.g., transforming or reducing an article to a different state or thing), then the claim satisfies the requirements of § 101." 450 U.S. at 192, 101 S.Ct. at 1059, 209 U.S.P.Q. at 10. Accordingly, to the extent that it conflicts with what we say here, *Christensen* is overruled.

## II. 35 U.S.C. § 103[2]

In arguing the § 103 question, the Solicitor relies principally on Laurent, maintaining, as did the examiner and the board, that "inherent summing" occurs among the parallel connected elements of Laurent.

We do not agree that the elements of Laurent "inherently" sum. The seismic cable disclosed in Laurent is in effect an elongated single hydrophone, i.e., seismic receiver. The piezoelectric sensing elements are connected in parallel and each receives the same signal. Laurent neither discloses nor suggests isolating or monitoring the signal received at a single sensing position along the length of the seismic cable. In contrast, appellants disclose an array of discrete receivers, each of which samples the reflectional wavefront at a different location along the wavefront. Those discrete signals are then summed to simulate a plane or cylindrical wavefront. Nothing in Laurent suggests an arrangement.

We conclude, therefore, that the board erred in sustaining the rejection under § 103.

Accordingly, the decision of the board is *reversed*.

REVERSED.

---

**2.** Because the parties have not separately argued the patentability of the dependent claims, all claims stand or fall on claims 1 and 24.