

---

amount of manual handling of each of the various individual items which are shelfstocked and displayed in retail grocery stores. The method comprises the use of a separate code marking on the label of each different kind or type of item, in conjunction with apparatus for assimilating and utilizing the code markings to supply applicable retail prices at the check-out counters in the store. The code may be in alphabetic or numeric form and is preferably printed as a part of the label affixed to each individual item by the manufacturer or processor of the item. The code marking and the retail price associated therewith applicable to each kind and type of article is recorded by the retailer in a memory device of a centralized "converter." The latter is linked to and synchronized with a register at the check-out counter. A code keyboard in the register is utilized so that the code markings on the items brought to the counter by the purchaser are manually registered by the checker to feed code input signals into the converter. It is the function of the converter to compare each code input signal with the code and price data stored in the memory device and feed back to the register an output signal which comprises the code input and the price associated therewith. By means of an output unit at the register, the output signal of the converter is utilized to print the code marking and corresponding price of each item on a sales slip.

Claim 2 is reproduced as illustrative:

2. A method of handling a large plurality of materials of varying identities comprising the steps of printing labels having visible coded indicia thereon, applying said labels to separate items at points of origin thereof with the same indicia upon each of the identical items only, applying said coded indicia to a memory system at a collection and distribution point of coded items, also applying local price information on said items to said memory system in correspondence with said coded indicia thereon, registering the coded indicia of each item distributed and comparing same with the indicia on said memory system to obtain the corresponding prices thereof, and printing the coded indicia and corresponding price of each item distributed at the point of distribution as a sales slip for items distributed.

The examiner rejected claims 2 and 3 for "failing to define patentable subject matter" under 35 U.S.C. §§ 100 and 101. The examiner observed that the steps defined in the claims "do not relate to any art but are merely directed to business techniques * * *."

The Board of Appeals affirmed the rejection on the ground that the claimed method is old and well known, and also "since the claims are drawn to a method of doing business."

We will first consider the issue of whether the claims define a new process, or one which is in fact old and well known.

An analysis of claim 2 discloses, with reference to the first two steps therein, (1) "printing labels having visible coded indicia thereon" and (2) applying the labels to separate items at points of origin with the same indicia on identical items. As to these two steps the board observed that appellants had admitted that they were disclosed in the prior art. We find nothing of record or in appellants' brief to controvert this observation.

Steps 3 and 4 of claim 2 call for applying the "coded indicia to a memory system at a collection and distribution point of coded items" and also applying the corresponding retail prices to the memory system.

It is a matter of common practice of wide notoriety, well within the ambit of judicial cognizance, for retail outlets to list by code or otherwise various items stocked for sale, together with the price assigned to each item, so as to enable the clerk or sales person to ascertain the charge to the customer. This practice relates back to the proverbial country merchant who has all but passed from the scene, but has his present-day counterpart in this context in the supermar-

ket cashier who has a price list of advertised "specials" taped to his register. Furthermore, common observation cannot escape the deluge of second class matter in the form of mail order catalogs which embody lists of merchandise designated by code or otherwise together with the purchase price assigned to individual items. Selecting one instance from many, equally relevant, the solicitor referred to radio tubes, it being well known that these items are disseminated to users through a code listing designating type and applicable retail price assigned to various types. Prominent in many drug and hardware stores today are tube testing machines having a cabinet full of tubes marked only by a code designation and an associated retail price list correlating the retail price to the code designation. These common merchandising practices, as to which we cannot escape judicial notice, would in practice and effect constitute a memory system in that they clearly reflect and suggest a coded indicia and corresponding prices.

Claim 2 concludes:

* * * registering the coded indicia of each item distributed and comparing same with the indicia on said memory system to obtain the corresponding prices thereof, and printing the coded indicia and corresponding price of each item distributed at the point of distribution as a sales slip for items distributed.

The board disposed of this recitation as follows:

We take judicial notice of the fact that when a sale is made of an item, as for instance, an appliance part, it is common practice to record the manufacturer's code number for the particular part on the sales slip; to compare the code number with code number in the parts catalog (memory) in order to obtain the corresponding prices of the items; and to print or write the corresponding price of each item sold as a sales slip for the items sold. It is our opinion that appellants' method is old and well known in

the prior art [of] which we have taken judicial notice.

We are not persuaded of error in the board's disposition of this limitation in claim 2. The reasoning which we have applied to the steps of claim 2 previously discussed is substantially applicable here.

We agree with the board that claim 3 is similar to claim 2, adding however:

* * * electrically comparing each registered code marking * * * and * * * a totalization of such prices * * *.

As we have noted, the appealed claims relate to a method and do not embrace apparatus. We, therefore, agree with the board that to electrically compare the code markings is without patentable significance in this method claim. We think it pertinent, however, to point out that appellants concede in their brief that "The claimed comparison may be done electrically or in any other way." We do not therefore feel patentability may be predicated on the recitation of an electrical comparison.

Appellants assert reversible error predicated on the argument that the board gave no thoughtful consideration to the Ray affidavit filed to counter certain assertions in the board's decision. This affidavit deals exclusively with the method employed in the sale of *automotive* parts, and was filed with appellants' request for reconsideration. It is apparent that in its decision on reconsideration the board took cognizance of the affidavit. The board stated:

While the method [claimed] may be different from that employed in the sale of *automotive parts*, however, it is our opinion that the method defined * * * is the same as that commonly used in connection with *catalog sales*. [Emphasis supplied]

We find no basis here upon which to predicate a finding of reversible error, and we therefore *affirm* the decision of the Board of Appeals on the ground that the claims do not define a novel process.

Our affirmance of this ground of rejection makes it unnecessary to consider the issue of whether a method of doing business is inherently unpatentable.

Affirmed.

WORLEY, C. J., and SMITH, J., concur in the result.

KIRKPATRICK, Judge (concurring).

I am in agreement with the result. I am, however, unable to agree that the claims can properly be held unpatentable for the reason that the process they define is an old one, which was the only ground upon which the majority has affirmed the decision of the board. The board had affirmed the examiner's rejection upon this ground and also on the ground that the invention is unpatentable because for a method of doing business. This latter reason as given by the board is amply supported by authority and I think that the court should place its conclusion upon that ground and not upon the other.

The majority opinion reaches its conclusion solely upon judicial notice of a "common practice of wide notoriety * * * for retail outlets to list by code or otherwise various items stocked for sale, together with the price assigned to each item, so as to enable the clerk or sales person to ascertain the charge to the customer." I am aware of the fact that the limits of judicial notice, particularly in patent cases, are expanding and the field of notice is now pretty broad. However, I think that the majority goes beyond today's limits in placing its decision solely upon judicial notice of the above quoted practice. Of course, every-

one knows that large department stores and supermarkets must have some system of recording prices of the various articles which they have for sale and keeping their sales people informed of such prices and of changes in them made from time to time. There may be any number of different ways of doing this, and, any number of different systems and I do not see how, without any evidence, we can use the doctrine of judicial notice to find that a system exists which anticipates that of the application or is so nearly like it as to make the application an obvious variation. That, it seems to me, is what we would have to do in order to sustain the conclusion reached by the majority. Without some concrete evidence of the prior art (of which there is none) I do not think that it is possible to find that the system of this application is old or that it is obvious under Section 103.[1]

For my part, I do not see how I could join in an opinion in which I would be taking judicial notice of business practices of which I have not the slightest knowledge or experience. For example, the fact stated by the majority that "in many drug and hardware stores today are tube testing machines having a cabinet full of tubes marked only by a code designation and an associated retail price list correlating the retail price to the code designation." I would want some evidence of this practice before I would base rejection of an application for a patent upon it.

I would place the affirmance of the board's decision upon the ground that the application discloses merely a method of doing business and is therefore for an unpatentable invention.

1. There was one reference cited before the examiner (Rogal et al., U.S. Patent No. 1,801,981). The board held that that reference would not sustain the examiner's rejection of the claims as obvious and it did not enter into the board's decision.