**STATE STREET BANK & TRUST CO., Plaintiff–Appellee,**

v.

**SIGNATURE FINANCIAL GROUP, INC. Defendant–Appellant.**

No. 96–1327.

United States Court of Appeals, Federal Circuit.

July 23, 1998.

William L. Patton, Ropes & Gray, Boston, Massachusetts, argued for plaintiff-appellee. With him on the brief were James L. Sigel and James S. DeGraw. Also on the brief was Maurice E. Gauthier, Samuels, Gauthier, Stevens & Reppert.

Steven L. Friedman, Dilworth, Paxson, Kalish & Kauffman LLP, Philadelphia, Pennsylvania, argued for defendant-appellant. With him on the brief were Steven J. Henry, Wolf, Greenfield & Sacks, P.C., Boston, Massachusetts; and Philip G. Koenig, Pittas //Koenig, Winchester, Massachusetts.

William T. Ellis, Foley & Lardner, Washington, D.C., for amicus curiae Information Technology Industry Council. With him on the brief were Harold C. Wegner, Richard L.

Schwaab, and Mary Michelle Kile. Of counsel was John F. Cooney, Venable, Baetjer, Howard & Civiletti, LLP.

Robert C. Scheinfeld, Baker & Botts, L.L.P., New York, New York, for amicus curiae Mastercard International Service. With him on the brief was Lawrence T. Kass. Of counsel on the brief for amicus curiae VISA International Service Association were Laurie S. Hane, Donald S. Chisum, and Alan L. Durham, Morrison & Foerster LLP, Palo Alto, California.

Before RICH, PLAGER, and BRYSON, Circuit Judges.

RICH, Circuit Judge.

Signature Financial Group, Inc. (Signature) appeals from the decision of the United States District Court for the District of Massachusetts granting a motion for summary judgment in favor of State Street Bank & Trust Co. (State Street), finding U.S. Patent No. 5,193,056 (the '056 patent) invalid on the ground that the claimed subject matter is not encompassed by 35 U.S.C. § 101 (1994). *See State Street Bank & Trust Co. v. Signature Financial Group, Inc.,* 927 F.Supp. 502, 38 USPQ2d 1530 (D.Mass.1996). We reverse and remand because we conclude that the patent claims are directed to statutory subject matter.

## BACKGROUND

Signature is the assignee of the '056 patent which is entitled "Data Processing System for Hub and Spoke Financial Services Configuration." The '056 patent issued to Signature on 9 March 1993, naming R. Todd Boes as the inventor. The '056 patent is generally directed to a data processing system (the system) for implementing an investment structure which was developed for use in Signature's business as an administrator and accounting agent for mutual funds. In essence, the system, identified by the proprietary name Hub and Spoke®, facilitates a structure whereby mutual funds (Spokes) pool their assets in an investment portfolio (Hub) organized as a partnership. This investment configuration provides the administrator of a mutual fund with the advantageous combination of economies of scale in administering investments coupled with the tax advantages of a partnership.

State Street and Signature are both in the business of acting as custodians and accounting agents for multi-tiered partnership fund financial services. State Street negotiated with Signature for a license to use its patented data processing system described and claimed in the '056 patent. When negotiations broke down, State Street brought a declaratory judgment action asserting invalidity, unenforceability, and noninfringement in Massachusetts district court, and then filed a motion for partial summary judgment of patent invalidity for failure to claim statutory subject matter under § 101. The motion was granted and this appeal followed.

## DISCUSSION

On appeal, we are not bound to give deference to the district court's grant of summary judgment, but must make an independent determination that the standards for summary judgment have been met. *Vas–Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1560, 19 USPQ2d 1111, 1114 (Fed.Cir.1991). Summary judgment is properly granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive issue at hand, whether the '056 patent is invalid for failure to claim statutory subject matter under § 101, is a matter of both claim construction and statutory construction. "[W]e review claim construction *de novo* including any allegedly fact-based questions relating to claim construction." *Cybor Corp. v. FAS Techs.,* 138 F.3d 1448, 1451, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) *(in banc).* We also review statutory construction *de novo. See Romero v. United States,* 38 F.3d 1204, 1207 (Fed.Cir.1994). We hold that declaratory judgment plaintiff State Street was not entitled to the grant of summary judgment of invalidity of the '056 patent under § 101 as a matter of law, because the patent claims are directed to statutory subject matter.

The following facts pertinent to the statutory subject matter issue are either undisputed or represent the version alleged by the nonmovant. *See Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The patented invention relates generally to a system that allows an administrator to monitor and record the financial information flow and make all calculations necessary for maintaining a partner fund financial services configuration. As previously mentioned, a partner fund financial services configuration essentially allows several mutual funds, or "Spokes," to pool their investment funds into a single portfolio, or "Hub," allowing for consolidation of, inter alia, the costs of administering the fund combined with the tax advantages of a partnership. In particular, this system provides means for a daily allocation of assets for two or more Spokes that are invested in the same Hub. The system determines the percentage share that each Spoke maintains in the Hub, while taking into consideration daily changes both in the value of the Hub's investment securities and in the concomitant amount of each Spoke's assets.

In determining daily changes, the system also allows for the allocation among the Spokes of the Hub's daily income, expenses, and net realized and unrealized gain or loss, calculating each day's total investments based on the concept of a book capital account. This enables the determination of a true asset value of each Spoke and accurate calculation of allocation ratios between or among the Spokes. The system additionally tracks all the relevant data determined on a daily basis for the Hub and each Spoke, so that aggregate year end income, expenses, and capital gain or loss can be determined for accounting and for tax purposes for the Hub and, as a result, for each publicly traded Spoke.

It is essential that these calculations are quickly and accurately performed. In large part this is required because each Spoke sells shares to the public and the price of those shares is substantially based on the Spoke's percentage interest in the portfolio. In some instances, a mutual fund administrator is required to calculate the value of the shares to the nearest penny within as little as an hour and a half after the market closes. Given the complexity of the calculations, a computer or equivalent device is a virtual necessity to perform the task.

The '056 patent application was filed 11 March 1991. It initially contained six "machine" claims, which incorporated means-plus-function clauses, and six method claims. According to Signature, during prosecution the examiner contemplated a § 101 rejection for failure to claim statutory subject matter. However, upon cancellation of the six method claims, the examiner issued a notice of allowance for the remaining present six claims on appeal. Only claim 1 is an independent claim.

■ The district court began its analysis by construing the claims to be directed to a process, with each "means" clause merely representing a step in that process. However, "machine" claims having "means" clauses may only be reasonably viewed as process claims if there is no supporting structure in the written description that corresponds to the claimed "means" elements. *See In re Alappat,* 33 F.3d 1526, 1540–41, 31 USPQ2d 1545, 1554 (Fed.Cir.1994) (*in banc*). This is not the case now before us.

■ When independent claim 1 is properly construed in accordance with § 112, ¶ 6, it is directed to a machine, as demonstrated below, where representative claim 1 is set forth, the subject matter in brackets stating the structure the written description discloses as corresponding to the respective "means" recited in the claims.

1. A data processing system for managing a financial services configuration of a portfolio established as a partnership, each partner being one of a plurality of funds, comprising:

(a) computer processor means [a personal computer including a CPU] for processing data;

(b) storage means [a data disk] for storing data on a storage medium;

(c) first means [an arithmetic logic circuit configured to prepare the data disk to magnetically store selected data] for initializing the storage medium;

(d) second means [an arithmetic logic circuit configured to retrieve information from a specific file, calculate incremental increases or decreases based on specific input, allocate the results on a percentage basis, and store the output in a

separate file] for processing data regarding assets in the portfolio and each of the funds from a previous day and data regarding increases or decreases in each of the funds, [sic, funds'] assets and for allocating the percentage share that each fund holds in the portfolio;

(e) third means [an arithmetic logic circuit configured to retrieve information from a specific file, calculate incremental increases and decreases based on specific input, allocate the results on a percentage basis and store the output in a separate file] for processing data regarding daily incremental income, expenses, and net realized gain or loss for the portfolio and for allocating such data among each fund;

(f) fourth means [an arithmetic logic circuit configured to retrieve information from a specific file, calculate incremental increases and decreases based on specific input, allocate the results on a percentage basis and store the output in a separate file] for processing data regarding daily net unrealized gain or loss for the portfolio and for allocating such data among each fund; and

(g) fifth means [an arithmetic logic circuit configured to retrieve information from specific files, calculate that information on an aggregate basis and store the output in a separate file] for processing data regarding aggregate year-end income, expenses, and capital gain or loss for the portfolio and each of the funds.

Each claim component, recited as a "means" plus its function, is to be read, of course, pursuant to § 112, ¶ 6, as inclusive of the "equivalents" of the structures disclosed in the written description portion of the specification. Thus, claim 1, properly construed, claims a machine, namely, a data processing system for managing a financial services configuration of a portfolio established as a partnership, which machine is made up of, at the very least, the specific structures disclosed in the written description and corresponding to the means-plus-function elements (a)-(g) recited in the claim. A "machine" is proper statutory subject matter under § 101. We note that, for the purposes of a § 101 analysis, it is of little relevance whether claim 1 is directed to a "machine" or a "process," as long as it falls within at least one of the four enumerated categories of patentable subject matter, "machine" and "process" being such categories.

This does not end our analysis, however, because the court concluded that the claimed subject matter fell into one of two alternative judicially-created exceptions to statutory subject matter.[1] The court refers to the first exception as the "mathematical algorithm" exception and the second exception as the "business method" exception. Section 101 reads:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

The plain and unambiguous meaning of § 101 is that any invention falling within one of the four stated categories of statutory subject matter may be patented, provided it meets the other requirements for patentability set forth in Title 35, i.e., those found in §§ 102, 103, and 112, ¶ 2.[2]

---

1. Indeed, although we do not make this determination here, the judicially created exceptions, i.e., abstract ideas, laws of nature, etc., should be applicable to all categories of statutory subject matter, as our own precedent suggests. *See Alappat*, 33 F.3d at 1542, 31 USPQ2d at 1556; *see also In re Johnston*, 502 F.2d 765, 183 USPQ 172 (CCPA 1974) (Rich, J., dissenting).

2. As explained in *In re Bergy*, 596 F.2d 952, 960, 201 USPQ 352, 360 (CCPA 1979) (emphases and footnote omitted):
   The first door which must be opened on the difficult path to patentability is § 101 .... The person approaching that door is an inventor, whether his invention is patentable or not .... Being an inventor or having an invention, however, is no guarantee of opening even the first door. What kind of an invention or discovery is it? In dealing with the question of kind, as distinguished from the qualitative conditions which make the invention patentable, § 101 is broad and general; its language is: "any * * * process, machine, manufacture, or composition of matter, or any * * * improvement thereof." Section 100(b) further expands "process" to include "art or method, and * * * a new use of a known process, machine, manufacture, composition of matter, or material." If the invention, as the inventor defines it in his claims (pursuant to § 112, second paragraph), falls into any one of the named categories, he is allowed to pass through to the second door, which is § 102; "novelty and loss of right to patent" is the sign

■ The repetitive use of the expansive term "any" in § 101 shows Congress's intent not to place any restrictions on the subject matter for which a patent may be obtained beyond those specifically recited in § 101. Indeed, the Supreme Court has acknowledged that Congress intended § 101 to extend to "anything under the sun that is made by man." *Diamond v. Chakrabarty*, 447 U.S. 303, 309, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980); *see also Diamond v. Diehr*, 450 U.S. 175, 182, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981).[3] Thus, it is improper to read limitations into § 101 on the subject matter that may be patented where the legislative history indicates that Congress clearly did not intend such limitations. *See Chakrabarty*, 447 U.S. at 308, 100 S.Ct. 2204 ("We have also cautioned that courts 'should not read into the patent laws limitations and conditions which the legislature has not expressed.'" (citations omitted)).

*The "Mathematical Algorithm" Exception*

The Supreme Court has identified three categories of subject matter that are unpatentable, namely "laws of nature, natural phenomena, and abstract ideas." *Diehr*, 450 U.S. at 185, 101 S.Ct. 1048. Of particular relevance to this case, the Court has held that mathematical algorithms are not patentable subject matter to the extent that they are merely abstract ideas. *See Diehr*, 450 U.S. 175, 101 S.Ct. 1048, *passim; Parker v. Flook*, 437 U.S. 584, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978); *Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972). In *Diehr*, the Court explained that certain types of mathematical subject matter, standing alone, represent nothing more than abstract ideas until reduced to some type of practical application, i.e., "a useful, concrete and tangible result." *Alappat*, 33 F.3d at 1544, 31 USPQ2d at 1557.[4]

■ Unpatentable mathematical algorithms are identifiable by showing they are merely abstract ideas constituting disembodied concepts or truths that are not "useful." From a practical standpoint, this means that to be patentable an algorithm must be applied in a "useful" way. In *Alappat*, we held that data, transformed by a machine through a series of mathematical calculations to produce a smooth waveform display on a rasterizer monitor, constituted a practical application of an abstract idea (a mathematical algorithm, formula, or calculation), because it produced "a useful, concrete and tangible result"—the smooth waveform.

Similarly, in *Arrhythmia Research Technology Inc. v. Corazonix Corp.*, 958 F.2d 1053, 22 USPQ2d 1033 (Fed.Cir.1992), we held that the transformation of electrocardiograph signals from a patient's heartbeat by a machine through a series of mathematical calculations constituted a practical application of an abstract idea (a mathematical algorithm, formula, or calculation), because it corresponded to a useful, concrete or tangible thing—the condition of a patient's heart.

■ Today, we hold that the transformation of data, representing discrete dollar amounts, by a machine through a series of mathematical calculations into a final share price, constitutes a practical application of a mathematical algorithm, formula, or calculation, because it produces "a useful, concrete and tangible result"—a final share price momentarily fixed for recording and reporting purposes and even accepted and relied upon by regulatory authorities and in subsequent trades.

The district court erred by applying the Freeman–Walter–Abele test to determine whether the claimed subject matter was an unpatentable abstract idea. The Freeman–Walter–Abele test was designed by the Court

on it. Notwithstanding the words "new and useful" in § 101, the invention is not examined under that statute for novelty because that is not the statutory scheme of things or the long-established administrative practice.

3. The Committee Reports accompanying the 1952 Act inform us that Congress intended statutory subject matter to "include anything under the sun that is made by man." S.Rep. No. 82–

1979 at 5 (1952); H.R.Rep. No. 82–1923 at 6 (1952).

4. This has come to be known as the mathematical algorithm exception. This designation has led to some confusion, especially given the Freeman–Walter–Abele analysis. By keeping in mind that the mathematical algorithm is unpatentable only to the extent that it represents an abstract idea, this confusion may be ameliorated.

of Customs and Patent Appeals, and subsequently adopted by this court, to extract and identify unpatentable mathematical algorithms in the aftermath of *Benson* and *Flook*. See *In re Freeman*, 573 F.2d 1237, 197 USPQ 464 (CCPA 1978) as modified by *In re Walter*, 618 F.2d 758, 205 USPQ 397 (CCPA 1980). The test has been thus articulated:

> First, the claim is analyzed to determine whether a mathematical algorithm is directly or indirectly recited. Next, if a mathematical algorithm is found, the claim as a whole is further analyzed to determine whether the algorithm is "applied in any manner to physical elements or process steps," and, if it is, it "passes muster under § 101."

*In re Pardo*, 684 F.2d 912, 915, 214 USPQ 673, 675–76 (CCPA 1982) (citing *In re Abele*, 684 F.2d 902, 214 USPQ 682 (CCPA 1982)).[5]

■ After *Diehr* and *Chakrabarty*, the Freeman–Walter–Abele test has little, if any, applicability to determining the presence of statutory subject matter. As we pointed out in *Alappat*, 33 F.3d at 1543, 31 USPQ2d at 1557, application of the test could be mislead-

ing, because a process, machine, manufacture, or composition of matter employing a law of nature, natural phenomenon, or abstract idea is patentable subject matter even though a law of nature, natural phenomenon, or abstract idea would not, by itself, be entitled to such protection.[6] The test determines the presence of, for example, an algorithm. Under *Benson*, this may have been a sufficient indicium of nonstatutory subject matter. However, after *Diehr* and *Alappat*, the mere fact that a claimed invention involves inputting numbers, calculating numbers, outputting numbers, and storing numbers, in and of itself, would not render it nonstatutory subject matter, unless, of course, its operation does not produce a "useful, concrete and tangible result." *Alappat*, 33 F.3d at 1544, 31 USPQ2d at 1557.[7] After all, as we have repeatedly stated,

> every step-by-step process, be it electronic or chemical or mechanical, involves an algorithm in the broad sense of the term. Since § 101 expressly includes processes as a category of inventions which may be patented and § 100(b) further defines the word "process" as meaning "process, art or

---

5. The test has been the source of much confusion. In *In re Abele*, 684 F.2d 902, 214 USPQ 682 (CCPA 1982), the CCPA upheld claims applying "a mathematical formula within the context of a process which encompasses significantly more than the algorithm alone." *Id.* at 909. Thus, the CCPA apparently inserted an additional consideration—the significance of additions to the algorithm. The CCPA appeared to abandon the application of the test in *In re Taner*, 681 F.2d 787, 214 USPQ 678 (CCPA 1982), only to subsequently "clarify" that the Freeman–Walter–Abele test was simply not the exclusive test for detecting unpatentable subject matter. *In re Meyer*, 688 F.2d 789, 796, 215 USPQ 193, 199 (CCPA 1982).

6. *See e.g. Parker v. Flook*, 437 U.S. 584, 590, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978) ("[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm."); *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130, 68 S.Ct. 440, 92 L.Ed. 588 (1948) ("He who discovers a hitherto unknown phenomenon of nature has no claim to a monopoly of it which the law recognizes. If there is to be invention from such a discovery, it must come from the application of the law to a new and useful end."); *Mackay Radio & Tel. Co. v. Radio Corp. of Am.*, 306 U.S. 86, 94, 59 S.Ct. 427, 83 L.Ed. 506 (1939) ("While a scientific truth, or the mathematical expression of it, is not a patentable invention, a novel and useful structure created

with the aid of knowledge of scientific truth may be.").

> [W]hen a claim containing a mathematical formula implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect (e.g., transforming or reducing an article to a different state or thing), then the claim satisfies the requirements of § 101.

*Diehr*, 450 U.S. at 192, 101 S.Ct. 1048; *see also In re Iwahashi*, 888 F.2d 1370, 1375, 12 USPQ2d 1908, 1911 (Fed.Cir.1989); *Taner*, 681 F.2d at 789, 214 USPQ at 680. The dispositive inquiry is whether the claim as a whole is directed to statutory subject matter. It is irrelevant that a claim may contain, as part of the whole, subject matter which would not be patentable by itself. "A claim drawn to subject matter otherwise statutory does not become nonstatutory simply because it uses a mathematical formula, computer program or digital computer." *Diehr*, 450 U.S. at 187, 101 S.Ct. 1048.

7. As the Supreme Court expressly stated in *Diehr*, its own holdings in *Benson* and *Flook* "stand for no more than these long-established principles" that abstract ideas and natural phenomena are not patentable. *Diehr*, 450 U.S. at 185, 101 S.Ct. 1048 (citing *Chakrabarty*, 447 U.S. at 309, 100 S.Ct. 2204 and *Funk Bros.*, 333 U.S. at 130, 68 S.Ct. 440.).

method, and includes a new use of a known process, machine, manufacture, composition of matter, or material," it follows that it is no ground for holding a claim is directed to nonstatutory subject matter to say it includes or is directed to an algorithm. This is why the proscription against patenting has been limited to *mathematical* algorithms. . . .

*In re Iwahashi*, 888 F.2d 1370, 1374, 12 USPQ2d 1908, 1911 (Fed.Cir.1989) (emphasis in the original).[8]

■ The question of whether a claim encompasses statutory subject matter should not focus on *which* of the four categories of subject matter a claim is directed to[9]—process, machine, manufacture, or composition of matter—but rather on the essential characteristics of the subject matter, in particular, its practical utility. Section 101 specifies that statutory subject matter must also satisfy the other "conditions and requirements" of Title 35, including novelty, nonobviousness, and adequacy of disclosure and notice. *See In re Warmerdam*, 33 F.3d 1354, 1359, 31 USPQ2d 1754, 1757–58 (Fed.Cir.1994). For purpose of our analysis, as noted above, claim 1 is directed to a machine programmed with the Hub and Spoke software and admittedly produces a "useful, concrete, and tangible result." *Alappat*, 33 F.3d at 1544, 31 USPQ2d at 1557. This renders it statutory subject matter, even if the useful result is expressed in numbers, such as price, profit, percentage, cost, or loss.

*The Business Method Exception*

■ As an alternative ground for invalidating the '056 patent under § 101, the court relied on the judicially-created, so-called "business method" exception to statutory subject matter. We take this opportunity to lay this ill-conceived exception to rest. Since its inception, the "business method" exception has merely represented the application of some general, but no longer applicable legal principle, perhaps arising out of the "requirement for invention"—which was eliminated by § 103. Since the 1952 Patent Act, business methods have been, and should have been, subject to the same legal requirements for patentability as applied to any other process or method.[10]

The business method exception has never been invoked by this court, or the CCPA, to deem an invention unpatentable.[11] Application of this particular exception has always been preceded by a ruling based on some clearer concept of Title 35 or, more commonly, application of the abstract idea exception based on finding a mathematical algorithm. Illustrative is the CCPA's analysis in *In re Howard*, 55 C.C.P.A. 1121, 394 F.2d 869, 157 USPQ 615 (CCPA 1968), wherein the court affirmed the Board of Appeals' rejection of the claims for lack of novelty and found it unnecessary to reach the Board's section 101 ground that a method of doing business is "inherently unpatentable." *Id.* at 872, 55 C.C.P.A. 1121, 394 F.2d 869, 157 USPQ at 617.[12]

8. In *In re Pardo*, 684 F.2d 912 (CCPA 1982), the CCPA narrowly limited "mathematical algorithm" to the execution of formulas with given data. In the same year, in *In re Meyer*, 688 F.2d 789, 215 USPQ 193 (CCPA 1982), the CCPA interpreted the same term to include any mental process that can be represented by a mathematical algorithm. This is also the position taken by the PTO in its Examination Guidelines, 61 Fed. Reg. 7478, 7483 (1996).

9. Of course, the subject matter must fall into at least one category of statutory subject matter.

10. As Judge Newman has previously stated,

[The business method exception] is . . . an unwarranted encumbrance to the definition of statutory subject matter in section 101, that [should] be discarded as error-prone, redundant, and obsolete. It merits retirement from the glossary of section 101. . . . All of the "doing business" cases could have been decided using the clearer concepts of Title 35. Patentability does not turn on whether the claimed method does "business" instead of something else, but on whether the method, viewed as a whole, meets the requirements of patentability as set forth in Sections 102, 103, and 112 of the Patent Act.

*In re Schrader*, 22 F.3d 290, 298, 30 USPQ2d 1455, 1462 (Fed.Cir.1994) (Newman, J., dissenting).

11. *See* Rinaldo Del Gallo, III, *Are "Methods of Doing Business" Finally out of Business as a Statutory Rejection?*, 38 IDEA 403, 435 (1998).

12. *See also Dann v. Johnston*, 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976) (the Supreme Court declined to discuss the section 101 argument concerning the computerized financial record-keeping system, in view of the Court's holding of patent invalidity under section 103); *In re Chatfield*, 545 F.2d 152, 157, 191 USPQ 730, 735 (CCPA 1976); *Ex parte Murray*, 9 USPQ2d 1819,

Similarly, *In re Schrader*, 22 F.3d 290, 30 USPQ2d 1455 (Fed.Cir.1994), while making reference to the business method exception, turned on the fact that the claims implicitly recited an abstract idea in the form of a mathematical algorithm and there was no "transformation or conversion of subject matter representative of or constituting physical activity or objects." 22 F.3d at 294, 30 USPQ2d at 1459 (emphasis omitted).[13]

State Street argues that we acknowledged the validity of the business method exception in *Alappat* when we discussed *Maucorps* and *Meyer*:

> *Maucorps* dealt with a business methodology for deciding how salesmen should best handle respective customers and *Meyer* involved a "system" for aiding a neurologist in diagnosing patients. Clearly, neither of the alleged "inventions" in those cases falls within any § 101 category.

*Alappat*, 33 F.3d at 1541, 31 USPQ2d at 1555. However, closer scrutiny of these cases reveals that the claimed inventions in both *Maucorps* and *Meyer* were rejected as abstract ideas under the mathematical algorithm exception, not the business method exception. *See In re Maucorps*, 609 F.2d 481, 484, 203 USPQ 812, 816 (CCPA 1979); *In re Meyer*, 688 F.2d 789, 796, 215 USPQ 193, 199 (CCPA 1982).[14]

Even the case frequently cited as establishing the business method exception to statutory subject matter, *Hotel Security Checking Co. v. Lorraine Co.*, 160 F. 467 (2d Cir.1908), did not rely on the exception to strike the patent.[15] In that case, the patent was found invalid ·for lack of novelty and "invention," not because it was improper subject matter for a patent. The court stated "the fundamental principle of the system is as old as the art of bookkeeping, i.e., charging the goods of the employer to the agent who takes them." *Id.* at 469. "If at the time of [the patent] application, there had been no system of bookkeeping of any kind in restaurants, we would be confronted with the question whether a new and useful system of cash registering and account checking is such an art as is patentable under the statute." *Id.* at 472.

This case is no exception. The district court announced the precepts of the business method exception as set forth in several treatises, but noted as its primary reason for finding the patent invalid under the business method exception as follows:

> If Signature's invention were patentable, any financial institution desirous of implementing a multi-tiered funding complex ·modelled (sic) on a Hub and Spoke configuration would be required to seek Signature's permission before embarking on

---

1820 (Bd.Pat.App & Interf. 1988) ("[T]he claimed accounting method [requires] no more than the entering, sorting, debiting and totaling of expenditures as necessary preliminary steps to issuing an expense analysis statement ....") states grounds of obviousness or lack of novelty, not of non-statutory subject matter.

**13.** Any historical distinctions between a method of "doing" business and the means of carrying it out blur in the complexity of modern business systems. *See Paine, Webber, Jackson & Curtis v. Merrill Lynch*, 564 F.Supp. 1358, 218 USPQ 212 (D.Del.1983), (holding a computerized system of cash management was held to be statutory subject matter.)

**14.** Moreover, these cases were subject to the *Benson* era Freeman–Walter–Abele test—in other words, analysis as it existed before *Diehr* and *Alappat*.

**15.** *See also Loew's Drive–in Theatres v. Park–in Theatres*, 174 F.2d 547, 552 (1st Cir.1949) (holding that the means for carrying out the system of transacting business lacked "an exercise of the

faculty of invention"); *In re Patton*, 29 C.C.P.A. 982, 127 F.2d 324, 327–28 (CCPA 1942) (finding claims invalid as failing to define patentable subject matter over the references of record.); *Berardini v. Tocci*, 190 F. 329, 332 (C.C.S.D.N.Y. 1911); *In re Wait*, 22 C.C.P.A. 822, 73 F.2d 982, 983 (CCPA 1934) ("[S]urely these ·are, and always have been, essential steps in all dealings of this nature, and even conceding, without holding, that some methods of doing business might present patentable novelty, we think such novelty is lacking here."); *In re Howard*, 55 C.C.P.A. 1121, 394 F.2d 869, 157 USPQ 615, 617 (CCPA 1968) ("[W]e therefore affirm the decision of the Board of Appeals on the ground that the claims do not define a novel process [so we find it] unnecessary to consider the issue of whether a method of doing business is inherently unpatentable."). Although a clearer statement was made in *In re Patton*, 29 C.C.P.A. 982, 127 F.2d 324, 327, 53 USPQ 376, 379 (CCPA 1942) that a system for transacting business, separate from the means for carrying out the system, is not patentable subject matter, the jurisprudence does not require the creation ·of a distinct business class of unpatentable subject matter.

such a project. *This is so because the '056 Patent is claimed [sic] sufficiently broadly to foreclose virtually any computer-implemented accounting method necessary to manage this type of financial structure.*

927 F.Supp. 502, 516, 38 USPQ2d 1530, 1542 (emphasis added). Whether the patent's claims are too broad to be patentable is not to be judged under § 101, but rather under §§ 102, 103 and 112. Assuming the above statement to be correct, it has nothing to do with whether what is claimed is statutory subject matter.

In view of this background, it comes as no surprise that in the most recent edition of the Manual of Patent Examining Procedures (MPEP) (1996), a paragraph of § 706.03(a) was deleted. In past editions it read:

> Though seemingly within the category of process or method, a method of doing business can be rejected as not being within the statutory classes. *See Hotel Security Checking Co. v. Lorraine Co.,* 160 F. 467 (2nd Cir.1908) and *In re Wait,* 24 USPQ 88, 22 C.C.P.A. 822, 73 F.2d 982 (1934).

MPEP § 706.03(a) (1994). This acknowledgment is buttressed by the U.S. Patent and Trademark 1996 Examination Guidelines for Computer Related Inventions which now read:

> Office personnel have had difficulty in properly treating claims directed to methods of doing business. Claims should not be categorized as methods of doing business. Instead such claims should be treated like any other process claims.

Examination Guidelines, 61 Fed.Reg. 7478, 7479 (1996). We agree that this is precisely the manner in which this type of claim should be treated. Whether the claims are directed to subject matter within § 101 should not turn on whether the claimed subject matter does "business" instead of something else.

### CONCLUSION

The appealed decision is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

*REVERSED* and *REMANDED.*