# United States Court of Appeals for the Federal Circuit

2007-1232
(Serial No. 09/387,823)

IN RE LEWIS FERGUSON, DARRYL COSTIN
and SCOTT C. HARRIS

Scott C. Harris, of Rancho Santa Fe, California, argued for appellants.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for the Director of the United States Patent and Trademark Office. With him on the brief was Thomas W. Krause, Associate Solicitor.

Appealed from:  United States Patent and Trademark Office
               Board of Patent Appeals and Interferences

# United States Court of Appeals for the Federal Circuit

2007-1232
(Serial No. 09/387,823)

IN RE LEWIS FERGUSON, DARRYL COSTIN
and SCOTT C. HARRIS

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

DECIDED: March 6, 2009

_____

Before NEWMAN, MAYER, and GAJARSA, Circuit Judges.

Opinion for the court filed by Circuit Judge GAJARSA. Concurring opinion filed by Circuit Judge NEWMAN.

GAJARSA, Circuit Judge.

Lewis Ferguson, Darryl Costin and Scott C. Harris (collectively, "Applicants") appeal from the final decision of the Board of Patent Appeals and Interferences ("Board") sustaining the rejection of all sixty-eight claims of their U.S. Patent Application Serial No. 09/387,823 ("the '823 application"). See Ex parte Ferguson, No. 2003-1044 (B.P.A.I. Dec. 18, 2006) ("Board Decision III"). Specifically, Applicants argue that the Board erroneously decided that the claims are not directed to patent-eligible subject matter under 35 U.S.C. § 101. Because we conclude that Applicants' claims are not

within the parameters of the statutory requirements and do not cover patent-eligible subject matter, particularly in light of this court's recent decision in <u>In re Bilski</u>, 545 F.3d 943 (Fed. Cir. 2008) (en banc), we affirm the decision of the Board.

## BACKGROUND

Applicants filed the '823 application on September 1, 1999.  The application is directed to a marketing paradigm for bringing products to market.  Claims 1–23 and 36–68 are method claims; claims 24–35 are "paradigm" claims.  Claim 1, which is representative of Applicants' method claims, reads:

> A method of marketing a product, comprising:
>
> developing a shared marketing force, said shared marketing force including at least marketing channels, which enable marketing a number of related products;
>
> using said shared marketing force to market a plurality of different products that are made by a plurality of different autonomous producing company, so that different autonomous companies, having different ownerships, respectively produce said related products;
>
> obtaining a share of total profits from each of said plurality of different autonomous producing companies in return for said using; and
>
> obtaining an exclusive right to market each of said plurality of products in return for said using.

'823 application cl.1.  Claim 24, which is representative of Applicants' paradigm claims, reads:

> A paradigm for marketing software, comprising:
>
> a marketing company that markets software from a plurality of different independent and autonomous software companies, and carries out and pays for operations associated with marketing of software for all of said different independent and autonomous software companies, in return for a contingent share of a total income stream from marketing of the software from all of said software companies, while allowing all of said software companies to retain their autonomy.

'823 application cl.24.

The examiner rejected each of claims 1–68 under 35 U.S.C. §§ 102, 103 and/or 112.  See Ex parte Ferguson, No. 2003-1044, slip op. at 2–3 (B.P.A.I. Aug. 27, 2004) ("Board Decision I").

On appeal, the Board did not sustain any of the examiner's grounds for rejection and, therefore, reversed the decision of the examiner.  Id. at 3–13.  Relying on its authority under 37 CFR § 1.196(b), however, the Board entered a new rejection of all claims under 35 U.S.C. § 101, stating: "Our interpretation of these claims is that they do not expressly or implicitly require performance of any of the steps by a machine, such as a general purpose digital computer."  Board Decision I, slip op. at 13.  The Board then analyzed the previous decisions of the Supreme Court and of this court and its predecessor and concluded that, pursuant to those precedents, Applicants' claims were not directed to statutory subject matter.

Upon Applicants' request for rehearing, the Board issued a response, which included a superseding rejection under 35 U.S.C. § 101.  Ex parte Ferguson, No. 2003-1044 (B.P.A.I. July 27, 2006) ("Board Decision II").  The Board entered the new § 101 rejection "to allow [the Board] to properly address each separate claim on appeal and to consider the U.S. Patent and Trademark Office's Interim Guidelines for Examination of Patent Applications for Patent Subject Matter Eligibility [("Guidelines")], . . . which were promulgated after the decision on appeal in this case."  Board Decision II, slip op. at 1–2 (citation omitted).  Referring primarily to representative claims 1 and 24, the Board proceeded to clarify the bases for its rejection with reference to the Guidelines.

As to method claims 1–23 and 36–68, the Board conceded that the claims nominally fell within one of the four categories of statutory subject matter—processes. But after detailed analysis, the Board concluded that Applicants' method claims were directed to an "abstract idea"—not patent-eligible subject matter. Id. at 9.

As to paradigm claims 24–35, the Board found that a "paradigm"[1] does not clearly fall within any of the four enumerated categories of statutory subject matter. And considering the paradigm claims' reference to "a marketing company," the Board determined:

> There is nothing in the record of this case that would suggest that "a marketing company" can be considered to be a process, a machine, a manufacture or a composition of matter. In other words, the paradigm claims on appeal are not directed to statutory subject matter under 35 U.S.C. § 101 because they are not directed to subject matter within the four recognized categories of patentable inventions. Therefore, the paradigm claims, claims 24–35, are not patentable under 35 U.S.C. [§] 101 for at least this reason.

Id. at 5.

Applicants again filed a request for rehearing; but the Board declined to modify its decision, stating: "We are still of the view that the invention set forth in claims 1–68 is directed to non-statutory subject matter." Board Decision III, slip op. at 4.

Applicants timely appealed to this court under 35 U.S.C. § 141. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

As this court recently reiterated in Bilski, "[w]hether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry, and any claim of an

---

[1] The Board found that "[a] 'paradigm' is generally defined as 'a pattern, example or model.'" Board Decision II, slip op. at 4 (citing Webster's New World Dictionary (1966)).

application failing the requirements of § 101 must be rejected even if it meets all of the other legal requirements of patentability." Bilski, 545 F.3d at 950; see also Parker v. Flook, 437 U.S. 584, 593 (1978). "Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law that we review de novo." Bilski, 545 F.3d at 951.

As this appeal turns on whether Applicants' invention as claimed meets the requirements set forth in § 101, we begin with the words of the statute:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title.

35 U.S.C. § 101.

The statute thus recites four categories of subject matter: processes, machines, manufactures, and compositions of matter. But even if a claim may be deemed to fit literally within one or more of the statutory categories, it may not be patent eligible. As the Supreme Court has repeatedly cautioned: "Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." Gottschalk v. Benson, 409 U.S. 63, 67 (1972); see also Bilski, 545 F.3d at 952 (collecting cases). We thus consider below whether any of Applicants' claims are drawn to patent-eligible subject matter within any of the four statutory categories.

I. The Method Claims

As to Applicants' method claims, which at least nominally fall into the category of process claims, this court's recent decision in Bilski is dispositive. In Bilski, we resolved the question: "what test or set of criteria governs the determination by the Patent and Trademark Office ('PTO') or courts as to whether a claim to a process is patentable

under § 101, or conversely, is drawn to unpatentable subject matter because it claims only a fundamental principle."[2] Bilski, 545 F.3d at 952. We stated that the Supreme Court's machine-or-transformation test is the "definitive test to determine whether a process claim is tailored narrowly enough to encompass only a particular application of a fundamental principle rather than to pre-empt the principle itself." Id. at 954. As this court phrased the machine-or-transformation test in Bilski:

> A claimed process is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing.

Id. (emphasis in original) (citing Gottschalk, 409 U.S. at 70; Diamond v. Diehr, 450 U.S. 175, 192 (1981); Parker, 437 U.S. at 589 n.9; Cochrane v. Deener, 94 U.S. 780, 788 (1876)). Applicants' method claims do not meet either prong of the machine-or-transformation test.

Applicants' method claims are not tied to any particular machine or apparatus. Although Applicants argue that the method claims are tied to the use of a shared marketing force, a marketing force is not a machine or apparatus. As this court recently stated in In re Nuijten, 500 F.3d 1346 (Fed. Cir. 2007), a machine is a "'concrete thing, consisting of parts, or of certain devices and combination of devices.' This 'includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result.'" Id. at 1355 (citation omitted) (quoting Burr v. Duryee, 68 U.S. (1 Wall.) 531, 570 (1863); Corning v. Burden, 56 U.S. (15 How.) 252, 267 (1853)). Applicants' method claims are not tied to any concrete parts, devices, or combination of devices.

---

[2] As used in Bilski, the term "fundamental principle" means "laws of nature, natural phenomena, and abstract ideas." 545 F.3d at 952 n.5.

Nor do Applicants' methods, as claimed, transform any article into a different state or thing. At best it can be said that Applicants' methods are directed to organizing business or legal relationships in the structuring of a sales force (or marketing company). But as this court stated in Bilski, "[p]urported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." 545 F.3d at 963.

Because Applicants' method claims fail to meet either prong of the machine-or-transformation test, we affirm the Board's rejection of claims 1–23 and 36–68 under § 101 as not drawn to patent-eligible subject matter.[3]

The decisions of the Board and the briefing and argument on appeal include extensive discussion of a so-called "useful, concrete, and tangible result" test. To avoid confusion, we clarify here that in Bilski, this court considered whether this "test" is valid and useful and concluded that it is not.[4] Specifically, we rejected the viability of the "useful, concrete, and tangible result" language of State Street Bank & Trust Co. v.

---

[3]     Contrary to the concurrence's assertion, we do not contend that this court has overturned State Street Bank & Trust Co. v. Signature Financial Group, 149 F.3d 1373 (1998), but merely note that the "useful, concrete and tangible result test" "is insufficient to determine whether a claim is patent-eligible under § 101," Bilski, 545 F.3d at 959, and "is inadequate," id. at 960 (reaffirming that "the machine-or-transformation test outlined by the Supreme Court is the proper test to apply" (emphasis added)), and that "those portions of our opinions in State Street and AT&T [Corp. v. Excel Commc'ns, Inc., 172 F.3d 1352 (Fed. Cir. 1999),] relying on a 'useful, concrete and tangible result' analysis should not longer be relied on," id. at 960 n.19.

[4]     In Bilski, this court also rejected the so-called Freeman-Walter-Abele test, the "technological arts" test, and the "physical steps" test. 545 F.3d at 959, 960, 960–61. Because these "tests" were not subjects of extensive argument in this case, we see no need to revisit them here.

Signature Financial Group, 149 F.3d 1373 (1998), as a test, because while such an inquiry "may in many instances provide useful indications of whether a claim is drawn to a fundamental principle or a practical application of such a principle," it inappropriately focuses on the result of the claimed invention rather than the invention itself. Bilski, 545 F.3d at 959.

Applicants also ask this court to consider a new test: "Does the claimed subject matter require that the product or process has more than a scintilla of interaction with the real world in a specific way?" In light of this court's clear statements that the "sole," "definitive," "applicable," "governing," and "proper" test for a process claim under § 101 is the Supreme Court's machine-or-transformation test, see Bilski, passim, we are reluctant to consider Applicants' proposed test. Suffice it to say that Applicants' proposed "scintilla of interaction" test begs the question whether even the most abstract of ideas and natural of phenomena interact with the real world. Applicants' proposed test would lead, therefore, both to ambiguity and to conflict with the Supreme Court precedents discussed above and in Bilski. We thus decline to adopt Applicants' proposed "scintilla of interaction" test and reaffirm that the machine-or-transformation test is the singular test for a process claim under § 101.

Finally, Applicants' assertion that the method claims are directed to business methods and should be treated as statutory subject matter in light of State Street is misplaced. "In State Street, as is often forgotten, we addressed a claim drawn not to a process but to a machine." Bilski, 545 F.3d at 959 n.18 (emphasis in original); see also State Street, 149 F.3d at 1373 ("Today, we hold that the transformation of data, representing discrete dollar amounts, by a machine through a series of mathematical

calculations into a final share price, constitutes a [patent-eligible invention] because it produces a useful, concrete and tangible result . . . ." (internal quotation marks omitted) (emphasis added)). The claim at issue in <u>State Street</u> was thus drawn to a patent-eligible machine implementation of what may have otherwise been a non–patent-eligible abstract idea. Moreover, we note that in <u>Bilski</u> this court refused to extend or even to take a broad reading of the holding in <u>State Street</u>, holding that the language employed in <u>State Street</u> "was certainly never intended to supplant the Supreme Court's [machine-or-transformation] test" and that "those portions of our opinion[] in <u>State Street</u> . . . relying solely on a 'useful, concrete and tangible result' analysis should no longer be relied on." <u>Bilski</u>, 545 F.3d at 959–60 & n.19.

For these reasons, we decline to consider Applicants' method claims other than through the lens of the machine-or-transformation test, upon the application of which we have determined that the claims are not drawn to patent-eligible subject matter. We hold, therefore, that Applicants' method claims are not patentable.

## II. The "Paradigm" Claims

Turning now to Applicants' paradigm claims, this court's recent decisions in <u>In re Nuijten</u>, 500 F.3d 1346 (Fed. Cir. 2007), <u>cert. denied sub nom.</u> <u>Nuijten v. Dudas</u>, 129 S. Ct. 70 (2008),[5] and in <u>Bilski</u> are instructive. As in <u>Nuijten</u>, Applicants' paradigm claims force us to consider whether the claimed subject matter fits into any of the four enumerated categories of statutory subject matter. Although we need not resolve the particular class of statutory subject matter into which Applicants' paradigm claims fall, the claims must satisfy at least one category. <u>Nuijten</u>, 500 F.3d at 1354 ("If a claim

---

[5]    This court's decision in <u>Bilski</u> expressly did not disturb <u>Nuijten</u>. <u>Bilski</u>, 545 F.3d at 951 n.2.

covers material not found in any of the four statutory categories, that claim falls outside the plainly expressed scope of § 101 even if the subject matter is otherwise new and useful."). We hold that they do not.

Applicants' paradigm claims are not directed to <u>processes</u>, as "no act or series of acts" is required. <u>Nuijten</u>, 500 F.3d at 1355. Applicants do not argue otherwise. Applicants' marketing company paradigm is also not a <u>manufacture</u>, because although a marketing company may own or produce tangible articles or commodities, it clearly cannot itself be an "'article[]' resulting from the process of manufacture." <u>Nuijten</u>, 500 F.3d at 1356. Again, Applicants do not argue otherwise. And Applicants' marketing company paradigm is certainly not a <u>composition of matter</u>. Applicants do not argue otherwise.

Applicants do assert, however, that "[a] company is a physical thing, and as such analogous to a machine." But the paradigm claims do not recite "a concrete thing, consisting of parts, or of certain devices and combination of devices," <u>Nuijten</u>, 500 F.3d at 1355, and as Applicants conceded during oral argument, "you cannot touch the company." Recording of Oral Argument at 11:30–11:32, <u>In re Ferguson</u>, No. 2007-1232 (Fed. Cir. Dec. 5, 2007), <u>available at</u> http://oralarguments.cafc.uscourts.gov/mp3/2007-1232.mp3. To the contrary, Applicants do no more than provide an abstract idea—a

business model for an intangible marketing company.[6]  See Bilski, 545 F.3d at 952 ("The true issue before us then is whether Applicants are seeking to claim a fundamental principle (such as an abstract idea) or a mental process.").  Indeed, it can be said that Applicants' paradigm claims are drawn quite literally to the "paradigmatic 'abstract idea.'"  Cf. In re Warmerdam, 33 F.3d 1354, 1360 (Fed. Cir. 1994).  Applicants' argument is, therefore, unavailing.

Absent identity with any statutory category, Applicants' paradigm claims are, therefore, unpatentable as not directed to statutory subject matter.[7]

CONCLUSION

The decision of the Board, entering the rejection of claims 1–68 of the '823 application for lack of statutory subject matter, is affirmed.

AFFIRMED

COSTS

Each party to bear its own costs.

---

[6]    The concurrence asserts that Ferguson's marketing paradigm is not an abstract idea, contending that "it is definite and concrete and limited."  Concurring op. at 2.  We disagree.  As explained above, there is nothing definite or concrete about Ferguson's marketing paradigm.  At most, it is simply composed of "legal obligations, organizational relationships, and business risks," which this court characterized in Bilski as "abstract constructs."  545 F.3d at 962; see also id. at 963 (comparing "physical objects or substances" to "public or private legal obligations or relationships, business risks, or other such abstractions").

[7]    The essence of the concurrence is an argument premised on policy and philosophical grounds.  We disagree with this approach, as it is not the role of courts to make such arguments but rather the responsibility of Congress to consider amending the patent laws as necessary to recognize and allow for innovation in the future.

# United States Court of Appeals for the Federal Circuit

2007-1232
(Serial No. 09/387,823)

IN RE LEWIS FERGUSON, DARRYL COSTIN
and SCOTT C. HARRIS

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

NEWMAN, Circuit Judge, concurring in the judgment.

If the court had simply held that the Ferguson marketing method fits the class of processes now barred from patenting by this court's ruling in In re Bilski, 545 F.3d 943 (Fed. Cir. 2008) (*en banc*), I could not object. However, the panel majority goes farther than is necessary or appropriate, redefining the Bilski opinion and expounding dicta that transcend the facts of this case.

My colleagues err in asserting that the "machine-or-transformation" test is that of the Supreme Court. See Gottschalk v. Benson, 409 U.S. 63, 71 (1972) ("We do not so hold."). And in their purported "clarification" of the Bilski decision, my colleagues suggest that Bilski overturned not only State Street Bank but also other precedent including that based on the Freeman-Walter-Abele test, the "technological arts" test, and the "physical steps" test. Maj.

op. at 7 n.3.  This sweeping rejection of precedent simply enlarges the taint on the thousands of patents that were granted on application of these tests.  Indeed, this court in Bilski reaffirmed the holding of State Street Bank that the "'business method exception' was unlawful and that business method claims (and indeed all process claims) are 'subject to the same legal requirements for patentability as applied to any other process or method.'" Bilski, 545 F.3d at 960 (quoting State Street Bank, 149 F.3d at 1375-76).  Although the Bilski court held that the State Street Bank criterion of "useful, concrete and tangible result" does not provide patent-eligibility if the machine-or-transformation test is not met, the court recognized that the State Street Bank test was directed to processes performed by computer, thus meeting the Bilski test:  "In State Street, as is often forgotten, we addressed a claim drawn not to a process but to a *machine*."  Bilski, 545 F.3d at 959 n.18 (emphasis in original).

There are indeed many uncertainties remaining in this court's restructure of the legal framework of modern technology and its fruits.  However, the potentially complex issues of when computers are Bilski-acceptable machines do not arise in the Ferguson claims.  I agree that these issues require clarification, for uncertainty as to legal rights is as much a disincentive to commerce as is their deprivation.  However, this case is not the appropriate vehicle for dictum of potentially large consequence.  For example, the court disposes of the Ferguson method on the ground that it is an "abstract idea," although it is definite and concrete and limited, and not at all abstract.  The court resolves this dilemma by defining "abstract idea" as anything that does not meet the Bilski machine-or-transformation test. However, the Ferguson marketing method is not an abstraction, even in Bilski terms.  The Ferguson method "does not pre-empt all uses of a fundamental principle in any field but is

limited to a particular use, a specific application. Therefore, it is not drawn to the principle in the abstract". Bilski, 545 F.3d at 957.

The court's circular definition of "abstraction" as anything that is not patent-eligible under Bilski can impact the many new methods flowing from the new information technologies. These methods have enhanced human capabilities, blurring the traditional line between machine and human; their patentability warrants at least consideration in appropriate cases, not disposition in dictum.

Until we are confident in understanding the consequences of our rulings, let us not forget that today's "knowledge economy" arose and thrived under the past law of patent eligibility. Although I agree that new thinking is warranted, this court's broadside assault on patent-eligible subject matter is unsupported by any stated policy or benefit to either society or commerce. We are ignorant of whether competitive activity, creative energies, and entrepreneurial initiatives, will founder or be facilitated by this court's dramatic change in the legal framework. I take note that scholarship is starting to appear, as economists recognize "the new economy." See, e.g., Richard G. Anderson, The New Economy: How the United States is Adapting to the Knowledge-Based Economy of the Twenty-First Century, Southern Illinois Economic Development Conference 21 (Sept. 21, 2006) (discussing intellectual property rights and the creation of knowledge). But much more needs to be understood, as this court undertakes to change the legal framework of this economy.

Today's new capabilities of acquiring and using knowledge are producing myriad creative advances. This court has offered no explanation of the interests and policy that we intend to serve by removing such advances from the legal framework of the patent system.

See, e.g., Milton Katz, <u>The Role of the Legal System in Technological Innovation and Economic Growth, The Positive Sum Strategy</u> 169 (1986) (explaining that the legal system plays a part in facilitating and promoting "business enterprise, technological innovation, and economic thought").

This court's retreat into the methods of the past is unworthy of our responsibility to support innovation in the future. Major adjustment in established law should be based on changing industrial or intellectual or equitable needs – of which no evidence is before this court. The only need of which I am aware is that of the current harsh economic times, when the need is of enhanced incentives to innovation and investment in new things and new industries, not reduction in the existing incentives.[1]

Meanwhile, the patentability of inventions directed to information-based procedures and computer-facilitated processes is readily tested under the established substantive criteria of patentability. I agree with the patent examiner's determination that the Ferguson marketing method does not pass the test of unobviousness, 35 U.S.C. §103. On this ground, I concur in the judgment.

---

[1] I take note of the panel majority's criticism of my views as "policy" related. Indeed, the major concern with my colleagues' aggressive elimination of patent access in areas of modern commerce is their failure to consider the policy effects. The success of the common law derives from its relation to the policy that it implements. As Justice Holmes stated:

> The very considerations which judges most rarely mention, and always with an apology, are the secret root from which the law draws all the justices of life. I mean, of course, considerations of what is expedient for the community concerned. Every important principle which is developed by litigation is in fact and at bottom the result of more or less definitely understood views of public policy; most generally, to be sure, under our practice and traditions, the unconscious result of instinctive preferences and inarticulate convictions, but nonetheless traceable to views of public policy in the last analysis.

Oliver W. Holmes, The Common Law 35-36 (1881).