NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: ANGADBIR SINGH SALWAN,**
*Appellant*

---

2016-2079

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 12/587,101.

---

Decided: March 13, 2017

---

ANGADBIR SINGH SALWAN, Potomac, MD, pro se.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee. Also represented by MAI-TRANG DUC DANG, KAKOLI CAPRIHAN.

---

Before PROST, *Chief Judge,* MAYER, and MOORE, *Circuit Judges.*

PER CURIAM.

Angadbir Singh Salwan appeals from the Patent Trial and Appeal Board's ("Board") decision affirming the examiner's rejection of all pending claims of U.S. Patent

Application    No. 12/587,101    ("the    '101 application").
Because we hold the claims are directed to patent-ineligible subject matter, we *affirm*.

## BACKGROUND

Dr. Salwan is the sole inventor of the '101 application, which claims methods of transferring patient health information, including electronic medical records ("EMR"), in a physician to patient network. The specification discloses that the network can be accessed by, *inter alia*, physicians, patients, healthcare product suppliers, and related government agencies. Users can access the network to schedule appointments, fill out forms, watch educational video clips, create electronic superbills, submit insurance claims, bill patients, communicate with doctors and patients, transfer patient health records, conference by video, advertise to patients, sell healthcare products, and rate healthcare providers. The parties agree that claim 1 is representative:

> 1.  A method for transferring patient health information among healthcare user groups or patients via a network, the method comprising:
>
>> providing at least one central data storage configured to receive and store patient health data from one or more private data storages of healthcare user groups, at least one central computer program embodied in at least one computer readable medium or embodied in at least one central server for processing and transferring patient health information stored in the one or more central data storages, and at least one device for providing user authorization to access patient data stored in the one or more central data storages, and configuring the central computer program or the central server for:

communicating through at least one computer program, which includes EMR and billing software, embodied in a computer readable medium with at least one private data storage storing electronic medical record (EMR) information originated, entered and controlled by at least one or more first healthcare service providers affiliated with the one or more healthcare user groups, including at least accounts information confidential for the first healthcare user groups, the confidential information includes at least accounts information of one or more insurance companies, which is at least used by the billing software to calculate patient portion of the bill, and clinical data generated by one or more service providers;

receiving from the at least one private data storage the EMR information for storing, processing and transmission to at least one of the patients, or one or more second healthcare user groups, wherein the information confidential for the first healthcare user groups including at least the accounts information of one or more insurance companies is not received and stored at the central data storage;

storing the received EMR information generated by the one or more service providers including

at least one of health problems, medications, diagnosis, prescriptions, notes written by the service Providers, diagnostic test results or patient accounts data in the at least one central data storage;

selectively retrieving the stored EMR information, generating one or more healthcare reports including one or more of health problem list, medication list, diagnoses report, prescription, diagnostic test result report, patient billing report; and

transmitting one or more healthcare reports to at least the second authorized healthcare user groups or the patient for reviewing.

On January 7, 2015, the examiner issued a Final Rejection of all pending claims (claims 1, 7, 8, 10, 13, 18, 25, 28, 29, 32–34, 41, and 43–71). The examiner rejected all pending claims under (1) 35 U.S.C. § 101 for lack of patentable subject matter; (2) 35 U.S.C. § 112, first paragraph, for lack of written description; and (3) 35 U.S.C. § 103(a) for obviousness. The examiner also rejected claims 51, 52, 69, and 70 under 35 U.S.C. § 112, second paragraph, for indefiniteness.

Dr. Salwan appealed to the Board. The Board adopted the examiner's analysis and affirmed each of his rejections. Under § 101, the Board determined that claim 1 is "directed to the abstract idea of billing and also to a fundamental economic practice of calculating a patient's bill." J.A. 11. It held that the recited method steps "fail to transform the nature of the claim as they are directed to generic computer structures for storing and transfer-

ring information." *Id.* Under § 112, first paragraph, the Board agreed with the examiner that the specification fails to provide support for claim 1's limitations that (1) the confidential information "is not received and stored at the central data storage" and (2) the EMR information is "entered and controlled" by healthcare user groups. The Board agreed with the examiner that the claim limitation in claims 69 and 70, "computing the quality of services," is not supported by the specification. The Board incorporated the examiner's analysis for rejecting all pending claims for obviousness under § 103(a). Lastly, under § 112, second paragraph, the Board agreed with the examiner that (1) the limitation "the patient appointment request" in claims 51 and 52 is indefinite for lack of antecedent basis, and (2) the limitation "feedback" in claims 69 and 70 is indefinite because it fails define the scope of the claim with reasonable certainty.

Dr. Salwan appeals and we have jurisdiction under 28 U.S.C. § 1295(a)(4)(A). Because we conclude that all pending claims are directed to patent-ineligible subject matter, we do not reach the merits of Dr. Salwan's arguments as to the Board's rejections under §§ 103 and 112.

### DISCUSSION

We review the Board's determination that claims are directed to patent-ineligible subject matter de novo. *In re Ferguson*, 558 F.3d 1359, 1363 (Fed. Cir. 2009). Section 101 provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. To determine whether claims are patent eligible under § 101, we apply the Supreme Court's two-step test articulated in *Alice Corp. Party v. CLS Bank International*, 134 S. Ct. 2347 (2014). First, we determine whether the claims are directed to a patent-ineligible concept: laws of nature, natural phenomena, and abstract ideas. *Id.*

at 2354–55. If so, we then proceed to the second step and "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72–73, 79–80 (2012)). The Supreme Court has explained that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358.

At *Alice* step one, we hold that the claims are directed to the abstract idea of billing insurance companies and organizing patient health information. Representative claim 1 recites storing, communicating, transferring, and reporting patient health information in a network. Among these steps, claim 1 recites using billing software to calculate a patient's bill based on EMR and insurance information. It specifies that account information of insurance companies is not shared, whereas EMR information—which includes, *inter alia*, medications, diagnoses, and test results—is received, stored, and selectively retrieved to generate reports. This describes little more than the automation of a "method of organizing human activity" with respect to medical information. *Alice*, 134 S. Ct. at 2356.

Dr. Salwan argues that the claims are not directed to an abstract idea because the calculation of a patient's bill and the transfer of patient EMR are not theoretical concepts. He argues the claims recite practical applications that are employed in a multi-billion dollar medical billing industry. But while these concepts may be directed to practical concepts, they are fundamental economic and conventional business practices. Under the Supreme Court's precedent in *Alice*, such concepts are often held to be abstract. *See, e.g., id.* at 2356 (holding the concept of intermediated settlement is an abstract idea directed to a "fundamental economic practice long prevalent in our

system of commerce") (citation omitted); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1347 (Fed. Cir. 2014) (explaining claims directed to "the mere formation and manipulation of economic relations" and "the performance of certain financial transactions" have been held to involve abstract ideas).

At *Alice* step two, we agree with the Board that the recited method steps "fail to transform the nature of the claim as they are directed to generic computer structures for storing and transferring information." J.A. 11. Considering the claim elements individually and as an ordered combination, the claims merely implement long-known practices related to insurance billing and organizing patient health information on a generic computer. Dr. Salwan himself argues that the inventive aspect of the claims overcomes the exchange of patient health information "using fax machines, or sending paper documents by postal mail, which was inefficient, costly and time consuming." Appellant's Br. 37; *see also* '101 application at ¶¶ 110–113 (identifying as "main objectives of the present invention" the ability to enable electronic communication of tasks "currently done manually using paper, phone and fax machine"). Given that the claims are directed to well-known business practices, the claimed elements of a generic "network," "computer program," "central server," "device," and "server for processing and transferring" are simply not enough to transform the abstract idea into a patent-eligible invention. *See Alice*, 134 S. Ct. at 2358. Dr. Salwan's reference to features recited by the dependent claims—such as video conferencing, patient appointment scheduling, patient registration forms, health-related advertisements, and allowing physicians to create handwritten EMR—does not alter our conclusion. We have considered Dr. Salwan's remaining arguments regarding patent eligibility and conclude they are without merit.

CONCLUSION

For the foregoing reasons, the Board's decision is *affirmed*.

**AFFIRMED**

COSTS

No costs.